IN THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF TEXAS HOUSTON
DIVISION

| | | |
|---|---|---|
| **KIMBERLY WEBB**<br>*Plaintiff,* | § § § | |
| v. | § § | CIVIL ACTION NO. 4:17-CV-03829 |
| **CITY OF HUNTSVILLE POLICE DEPARTMENT AND KEVIN LUNSFORD INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY**<br>*Defendants.* | § § § § § § | JURY DEMANDED |

### PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT

For the following reasons, Defendant's Motion for Summary Judgement before this court should be **denied**.

### I.   Background

1. Plaintiff began her employment with Defendant City of Huntsville Police Department ("Huntsville P.D.") as a Patrol Officer on March 4, 2013. Plaintiff consistently earned positive reviews and pay increases during her time with the Huntsville P.D. In addition to her positive reviews she was promoted to positions of increasing responsibility eventually earning the final rank and title of Senior Police Officer.

2. Officer Webb reported that she had been physically assaulted by her supervisor Sergeant Eric Scott at the Huntsville Police Station. In this incident, Sgt. Scott approached Mrs. Webb from behind and kicked her legs from under her causing her to fall (the "leg sweep"). As a result of Sgt. Scott's leg sweep Mrs. Webb sustained a significant injury to her elbow and sought medical treatment. She detailed the incident as part of a worker's compensation

complaint on February 28, 2017.

3. On March 3, 2017 Mrs. Webb further reported that Sgt. Scott had made repeated sexual advances towards her during her time with the department. In her report she noted that she originally reported Scott's behavior to the department in 2014. When she rejected his advances he became more aggressive and physically violent towards her at the police station. In addition to injuring her elbow with during the leg sweep, Mrs. Webb detailed additional violent encounters with Sgt. Scott including a January 2017 incident when he placed her in a dangerous arm bar and pressed the release button on her service weapon causing the magazine to fall out.

4. As a result of Sgt. Scotts' violent attack, it was recommended that Mrs. Webb take a medical leave to recover from her injuries. After the incident, Mrs. Webb received an outpouring of support from many of her colleagues at the Huntsville P.D. In fact, several female colleagues came forward detailing similar encounters with Sgt. Scott.

5. As a direct result of filing her sexual harassment complaint against Sgt. Scott, Mrs. Webb began to receive scrutiny in a manner that she had not experienced at any time during her employment with the department. On March 7, 2017 her complaint was transferred to the City of Huntsville's Human Resources Director Julie O'Connell. It was clear from the outset that Mrs. Webb herself had become the target of Ms. O'Connell's investigation. Despite concerns about the true motives of her investigation, Mrs. Webb met with Ms. O'Connell several times in March of 2017 to discuss her complaint against Sgt. Scott.

6. On March 22, 2017 Mrs. Web retained counsel to prosecute her claims against the

Huntsville P.D. On March 23, 2017 Ms. O'Connell requested a follow-up meeting to discuss her claims against Sgt. Scott. In response to Ms. O'Connell's meeting request, Mrs. Webb requested an opportunity to confer with her attorney prior to any further discussions.

7. On March 24, 2017 Mrs. Webb received a memorandum from Huntsville Police Chief Kevin Lunsford ordering her to meet with Ms. O'Connell on March 24, 2017 at 9:00am. In the memorandum Chief Lunsford threatened to terminate Mrs. Webb's employment if she did not attend the meeting as directed.

8. Mrs. Webb met with Ms. O'Connell as directed on March 24, 2017. During the meeting she reported that Sgt. Scott has sent her numerous sexually explicit pictures via text message beginning as far back as 2013. Mrs. Webb denied sending Sgt. Scott any sexually explicit pictures or that the two were engaged in a romantic relationship.

9. After the March 24th meeting Chief Lunsford commenced a formal investigation into what he claimed were Mrs. Webb's "untruthful statements" about her relationship with Sgt. Scott made during her meeting with Ms. O'Connell.

10. On April 12, 2017 Mrs. Webb was asked to voluntarily submit to a polygraph examination to only answer questions about the nature of her relationship with Sgt. Scott. The polygraph examination was to commence immediately on April 12, 2017 again outside of the presence of Mrs. Webb's attorneys. Mrs. Webb had concerns about the reliability of the test and why the department had chosen to administer it at this time. Since was told that the examination was voluntarily, she asked to speak with her husband and attorney

5

before moving forward. In direct response to her request to meet with her husband and attorney, Mrs. Webb was immediately suspended by Chief Lunsford. She was ordered to submit to the polygraph examination regarding the nature of her relationship with Sgt. Scott and again threatened with termination if she did not comply.

11. Concerned about the City's clear efforts to silence her, Mrs. Webb contacted members of the Huntsville City Counsel to report the incident along with the hostility that both she and other female officers have endured at the Police Department.

12. On April 13, 2017 she received a written warning from Ms. O'Connell warning her not to speak to the City Council about any of the concerns that she raised in her complaint. Chief Lunsford was copied onto this warning letter.

13. On April 18, 2017 Mrs. Webb polygraph examination as ordered despite her concerns about the reliability and timing of the test. During the examination, Mrs. Webb was repeatedly accused of having a relationship with Sgt. Scott and exchanging sexually explicit text messages with him. She continued to deny having a relationship with Sgt. Scott or sending any explicit messages to him. Immediately following the examination Mrs. Webb was told that she had failed the examination. She was also berated by the examiner for making accusations against Sgt. Scott and offered unsolicited advice for "how to be a good wife."

14. On May 3, 2017 Mrs. Webb was terminated from her position as a Senior Police Officer with the Huntsville Police Department based on the results of her polygraph examination. In addition to terminating her employment, Chief Lunsford also terminated Mrs. Webb's

5

Law Enforcement Commission reporting that she had been "Dishonorably Discharged."

15. On May 3, 2017 Chief Lunsford also announced the department's findings into the investigation of Mrs. Webb's February 28th complaint against Sgt. Scott for assault. In a written memorandum Chief Lunsford announced that Sgt. Scott had acted inappropriately during the incident and would be reduced in rank from Sergeant to Police Officer.

16. The contrast between the Huntsville P.D.'s handling this situation could not be more striking. Despite a formal finding that Sgt. Scott assaulted Mrs. Webb, Sgt. Scott was reduced in rank and retained his position with the Huntsville P.D. and his police commission. By contrast, Mrs. Webb was fired and dishonorably discharged from her position based solely on the results of an unreliable polygraph examination focused solely on the details of her personal history. The Huntsville P.D. approved Mrs. Webb's termination despite its own regulations prohibiting termination based solely on the results of a polygraph examination. These actions clearly demonstrate that Mrs. Webb was terminated because she came forward to report sexual harassment at the Huntsville Police Department.

## II. Summary

17. Defendant's Motion for Summary Judgement should be denied. Plaintiff is able to show that she meets her *prima facie* case of retaliation and that there are genuine issues of material fact as to Defendant's pretextual assertions. Plaintiff is able to establish that Defendant retaliated against her for exercising her rights under all statutes. Moreover, Plaintiff can establish that Defendant's proffered "legitimate, nondiscriminatory" reasons for her termination were mere pretext.

18. In general, summary judgment is an inappropriate tool for resolving claims of employment discrimination, which involve nebulous questions of motivation and intent. *Thornbrough*

*v. Columbus and Greenville R. Co.,* 760 F.2d 633, 640 (5th Cir. 1985). *See also Hayden v. First National Bank,* 595 F.2d 994, 997 (5th Cir. 1979) ["When dealing with employment discrimination cases, … granting of summary judgment is especially questionable."]; *EEOC v. Southwest Texas Methodist Hospital,* 606 F.2d 63, 65 (5th Cir. 1979), *cert. denied*, 445 U.S. 928 (1980). "Often, motivation and intent can only be proved through circumstantial evidence; determinations regarding motivation and intent depend on complicated inferences from the evidence and are therefore peculiarly within the province of the factfinder. … Thus, if any facts are in dispute, summary judgment is generally inappropriate." *Thornbrough v. Columbus and Greenville R. Co., supra,* 760 F.2d, at 641.

19. Any factual issues of controversy must be resolved in favor of the non-movant to the extent that the motion must be denied where facts specifically averred by the non-movant contradict facts specifically averred by the movant. *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990).

20. In determining the existence of a genuine issue for trial, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); In reviewing a motion for summary judgment, the Court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *Havrill v. Westward Communications, L.L.C.*, 433 F.3d 428, 436 (5th Cir. 2005); *Reeves v. Sanderson Plumbing Co.*, 530 U.S. 133, 150 (2000); The Court must disregard all evidence favorable to the moving party that the jury is not required to believe.

*Id.*

### III. **Argument and Analysis**

21. Plaintiff Kimberly Webb requests the Court to deny the Defendant City of Huntsville's motion for summary judgment.

22. First, it is undisputed that Plaintiff did in fact make complaints of sexual harassment in the workplace. Next, it is undisputed that she was terminated shortly thereafter.

23. Plaintiff Webb has guts. She spoke up against Scott. Others had similar issues with Scott, and Webb, to her detriment and the detriment of her career, spoke up. She was then asked to take a "polygraph" test under spurious conditions and terms, and to be administered by an individual known to skew test results, and someone that was admonished for that very type of behavior—skewing polygraph test results. She was subsequently retaliated against for complaining and for demanding fair treatment in the alleged investigation of her claims.

24. As the U.S. Supreme Court has stated, the key question with regards to retaliation claims is whether the challenged action is "materially adverse" in that it is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945–46 (5th Cir. 2015) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415, 165 L. Ed. 2d 345 (2006). The standard is objective, but "the significance of any given act of retaliation will often depend upon the particular circumstances […] Context matters*." Id.* Subjecting a woman to polygraph test (which is not foolproof) is intended to do just that—chill and dissuade anyone from speaking up.

25. Now, Defendant seeks to take an "easy way out" by asserting that this federal court is somehow bound by determinations of administrative agencies. This court is not bound by

5

any decisions of the Texas Workforce Commission, just as it would not be bound by a finding of cause or no cause by the EEOC. These are independent proceedings.

26. Moreover, in no other proceeding referenced by Defendant, was retaliatory discharge the basis of any determination. **Retaliation is unique to this lawsuit, and this lawsuit only**. Therefore, there can be no res judicata or estoppel.

27. Moreover, and ruling by the Texas Workforce Commission ("TWC") and the and an administrative law judge presiding over a hearing for the Texas Commission on Law Enforcement ("TCOLE") do not render "final judgments" by a state court. Therefore, Plaintiff's claims are not barred by res judicata or collateral estoppel. See Cox v. Nueces Cty., No. 2:12-CV-339 (S.D. Tex. Filed Nov. 2, 2013) and Burnside v. Nueces Cty., No 2:12-CV-341 (S.D. Tex. Filed Nov. 5, 2012).

28. Ultimately, there is a fact question as to whether Webb was terminated for "insubordination" or because she complained of sexual harassment. That is for a jury to decide. The claim that the decisions of an administrative agency on an issue not even relevant to the underlying cause of action here for retaliation is disingenuous and meritless.

### IV.    Conclusion

WHEREFORE, PREMISES CONSIDERED, Plaintiff Webb respectfully requests that this Court deny Defendant's Motion for Summary Judgment as Ms. Webb has raised questions of fact appropriate for a jury. Ms. Sutton further requests all other relief to which she may be entitled to in law or in equity.

Respectfully Submitted,



Alfonso Kennard, Jr.
Texas Bar No. 24036888
2603 Augusta Drive, Ste. 1450
Houston, Texas 78229
Main: (713) 742-0900
Fax: (713) 742-0951
**ATTORNEY FOR PLAINTIFF**

### CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the Plaintiff's Response to Defendant's Motion for Summary Judgement has been served on opposing counsel, electronically, via email on this 20th day of July 2019.

WILLIAM S. HELFAND
24 Greenway Plaza, Suite 1400
Houston, Texas 77046
(713) 659-6767 Telephone
(713) 759-6830 Facsimile
 bill.helfand@lewisbrisbois.com
**ATTORNEY FOR DEFENDANTS**

Alfonso Kennard, Jr.