United States District Court
Southern District of Texas
**ENTERED**
February 08, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KIMBERLY WEBB, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:17-CV-3829 |
| § | |
| CITY OF HUNTSVILLE POLICE § | |
| DEPARTMENT, *et al*, § | |
| § | |
| Defendants. § | |

## ORDER

Before the Court are Defendant City of Huntsville's Motion for Summary Judgment (the "Motion") (Doc. #23), Plaintiff's Amended Response (Doc. #76), and Defendant's Reply (Doc. #82). Having reviewed the parties' arguments and applicable law, the Court grants the Motion.

**I.      Background**

This dispute arises out of Defendant City of Huntsville (the "City") terminating Plaintiff Kimberly Webb's employment as a Senior Police Officer with the Huntsville Police Department ("HPD"). Doc. #6. In early 2017, Plaintiff filed two complaints of sexual harassment and physical assault against a superior, Sergeant Eric Scott, which was transferred to the City's Human Resource Director, Julie O'Connell, for an investigation. Doc. #6 ¶¶ 9–10, 12. O'Connell interviewed fifteen witnesses during the investigation, including Plaintiff and Scott. Doc. #76, Ex. 2 at 27:12. HPD Chief of Police Kevin Lunsford directed Plaintiff to cooperate fully with the investigation. Doc. #23, Ex. 6 at 1. Plaintiff met with O'Connell a few times before refusing to meet again until her attorney approved the meeting. *Id.*; Doc. #40, Ex. 20. Lundsford gave Plaintiff a second written order to cooperate and meet with O'Connell, which Plaintiff complied with. Doc. #23, Ex. 1 and Ex. 6 at 1.

When Plaintiff and Scott made conflicting statements regarding their communications with each other, Lundsford initiated a second investigation into the conflicting statements to resolve the apparent untruthfulness of one of his officers. Doc. #23, Ex. 6 at 2. In accordance with HPD Directive 2.4, which authorized the use of polygraph examinations for investigations into complaints against employees, Scott voluntarily submitted to a polygraph examination, which indicated no deception. *Id.* at 3; Doc. #40, Ex. 16 at 4. At an April 12, 2017 meeting with O'Connell and Lundsford, Plaintiff refused to consent to a polygraph examination, refused Lunsford's direct order to submit to a polygraph examination, interrupted and spoke over Lunsford, made inappropriate comments, and refused to sign a document stating that she received Lundsford's written order to submit to said examination. Doc. #23, Ex. 3 and Ex. 4. Based on these acts of insubordination, Plaintiff was suspended with pay. *Id.*, Ex. 3. Two days later, Lundsford gave Plaintiff another opportunity to comply with his order to take a polygraph examination. Doc. #40, Ex. 5. Plaintiff complied and her polygraph examination indicated deception. Doc. #23, Ex. 6 at 3. Plaintiff was subsequently terminated on May 3, 2017. *Id.* The parties disagree on whether Plaintiff was terminated for her dishonesty and insubordination or in retaliation for filing complaints against Scott.

On December 20, 2017, Plaintiff initiated this action against the City of Huntsville and Lunsford. Doc. #1. She later filed a First Amended Complaint, asserting claims for retaliation in violation of the opposition and participation clauses of Title VII of the Civil Rights Act of 1964 ("Title VII"), the First Amendment, and Chapter 451 of the Texas Labor Code. Doc. #6. The Court subsequently dismissed Plaintiff's sole claim against Lunsford and her Title VII participation claim against the City. Doc. #17. As the only remaining defendant, the City ("Defendant") moved for summary judgment on Plaintiff's surviving claims, arguing that Plaintiff

had failed to present or identify any evidence supporting any elements of her claims. Doc. #23 at 29. Finding that Plaintiff had failed to produce any evidence, thereby failing to meet her burden under Federal Rule of Civil Procedure 56, the Court granted the summary judgment motion. Doc. #38 at 3. Plaintiff filed a Motion for Relief under Federal Rule of Civil Procedure 60(b) or, Alternatively, Motion for New Trial, Motion to Alter, or Amend Judgment under Rule 59, seeking an amended judgment only on her Title VII retaliation claim. Doc. #40 at 2. The Court granted relief under Rule 60(b) based on Plaintiff's former counsel's conduct and allowed Plaintiff to file an amended response to the Motion. Doc. #52. After some additional discovery, the Motion is now fully briefed and ripe for review.

## II. Legal Standard

Summary judgment is proper if the movant demonstrates "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine dispute as to a material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Rogers v. Bromac Title Services, L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014) (internal citations omitted). "The moving party bears the initial burden on demonstrating the absence of a genuine issue of material fact. If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial." *Carnes Funeral Home, Inc. v. Allstate Ins. Co.*, 509 F. Supp. 3d 908, 915 (S.D. Tex. 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) and FED. R. CIV. P. 56(e)). Courts must construe "all facts and inferences in the light most favorable to the nonmoving party. But summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Rogers*, 755 F.3d at 350 (internal citations omitted).

## III. Analysis

Defendant moves for summary judgment on Plaintiff's remaining Title VII retaliation claim, arguing in part that Plaintiff cannot show that she was terminated for filing a complaint against Scott rather than for her insubordination and dishonesty.[1] Doc. #23 at 26. Title VII retaliation claims are governed by the three-step *McDonnell Douglas* burden-shifting framework, which first requires that an employee produce evidence of a prima facie case of retaliation. *LeMaire v. Louisiana Dep't of Transp. & Dev.*, 480 F.3d 383, 388 (5th Cir. 2007). To do so, a plaintiff "must show that (1) she engaged in a Title VII protected activity; (2) she was subject to an adverse employment action; and (3) there was a but-for causal connection between her [engagement] in the protected activity and the adverse employment action." *Harville v. City of Houston, Mississippi*, 945 F.3d 870, 879 (5th Cir. 2019). If the employee satisfies her initial burden, "the burden shifts to the employer to state a legitimate, non-retaliatory reason for its

---

[1] Defendant also argues that the doctrines of res judicata and collateral estoppel preclude Plaintiff's retaliation claim in light of two Texas administrative agencies finding, and one state district court affirming, that Plaintiff was insubordinate, dishonest, and committed misconduct. Doc. #23 at 16–24; *id.*, Ex. 10 at 2 and Ex. 12 at 8. As an initial matter, Defendant's failure to present said affirmative defenses in an answer did not prejudice plaintiff's ability to respond and may be properly considered by the Court. *See Bradberry v. Jefferson Cty., Tex.*, 732 F.3d 540, 553 (5th Cir. 2013). However, because Plaintiff did not have an opportunity to bring Title VII claims before either administrative agency and significantly different legal standards apply for determining whether (1) Plaintiff was insubordinate, dishonest, or committed misconduct and (2) Defendant's alleged retaliatory animus was a but-for cause of Plaintiff's termination in violation of Title VII, the Court finds that neither doctrine applies. *See Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009) (for res judicata to apply, "the same claim or cause of action must be involved in both cases"); *DeShazo v. Nations Energy Co.*, 286 F. App'x 110, 113 (5th Cir. 2008) (collateral estoppel does not apply unless "both the facts and the legal standards used to assess the facts [are] identical"); *Hyatt v. Am. Citadel Guard Inc.*, No. CIV.A.06 2316, 2007 WL 1169370, at *4 (W.D. La. Apr. 19, 2007) (finding that administrative agencies' determination of misconduct did not preclude ADA discrimination claim).

decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation." *LeMaire*, 480 F.3d. at 388–89 (citations omitted). To establish pretext, an employee must show her employer's "proffered explanation is false or 'unworthy of credence'" and "that the adverse action would not have occurred 'but for' the employer's retaliatory motive." *Miniex v. Houston Hous. Auth.*, 400 F. Supp. 3d 620, 650 (S.D. Tex. 2019); *Feist v. Louisiana, Dep't of Just., Off. of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013). A plaintiff must either show that the decisionmaker harbored a retaliatory animus against her or, under a cat's paw theory of liability, "the person with a retaliatory motive somehow influenced the decisionmaker to take the retaliatory action." *Zamora v. City of Houston*, 798 F.3d 326, 332 (5th Cir. 2015). "Whether summary judgment is appropriate depends on numerous factors, including the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered." *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (quotation omitted).

Here, Defendant acknowledges that Plaintiff engaged in a protected activity—filing complaints against Scott—and that she suffered an adverse employment action—her termination. Defendant has also articulated a legitimate non-discriminatory reason for Plaintiff's termination: her "repeated insubordination and dishonesty during the City's investigation into Plaintiff's complaint against" Scott. Doc. #23 at 29. Plaintiff does not dispute that this is a legitimate, non-retaliatory reason for terminating a police officer, but instead appears to argue that this proffered reason is pretextual and Plaintiff's termination was in fact in retaliation for filing complaints against Scott. Doc. #76. Thus, the question before the Court is whether Plaintiff has shown that she would not have been terminated but for Defendant's retaliatory motive. *See Feist*, 730 F.3d at 454.

Plaintiff first characterizes O'Connell's investigation into Plaintiff's complaints as a "sham investigation" and argues that O'Connell and Lunsford disregarded or ignored specific evidence from which a jury could infer that Defendant was protecting Scott and attempting to punish Plaintiff for her protected activity.[2] Doc. #76 at 14. O'Connell interviewed fifteen witnesses regarding Plaintiff's complaint against Scott. Doc. #76, Ex. 2 at 27:12. Though Plaintiff complains about O'Connell's failure to remember some of the substance of these interviews during her deposition, which took place three years later, Plaintiff offers no authority for the proposition that such a failure is evidence of unlawful animus. Doc. #76 at 13. To the contrary, based on the findings of O'Connell's investigation, Lunsford determined that Scott's conduct was "inappropriate," "unacceptable," and "did not reflect the level of leadership and professionalism required" of him. Doc. #40, Ex. 7. Lunsford accordingly reduced Scott's rank from Sergeant to Senior Officer. *Id.* The Court has thoroughly reviewed the evidence allegedly disregarded or ignored by O'Connell and Lundsford and does not find evidence of "weaknesses, implausibilities, inconsistencies, or contradictions" from which a reasonable jury could plausibly infer a "sham investigation" or retaliatory animus held by O'Connell or Lundsford. *See* Doc. #76 at 11–13; *id.*, Ex. 3; Doc. #40, Ex. 13 and Ex. 14.

Additionally, Plaintiff takes issue with her alleged dishonesty, arguing that she was terminated solely as a result of her polygraph examination in violation of HPD policy and the

---

[2] Plaintiff also argues "that the investigation in this case well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Doc. #76 at 10. To the extent Plaintiff is attempting to argue that O'Connell's investigation constitutes constructive discharge, such a determination is not necessary because Plaintiff's termination is a materially adverse action. *See Cabral v. Brennan*, 853 F.3d 763, 767 (5th Cir. 2017) (recognizing constructive discharge as a materially adverse action); *see also Garcia v. City of Harlingen*, No. CIV. A. B-06-CV-134, 2009 WL 159583, at *7, *17 (S.D. Tex. Jan. 21, 2009) (noting that improper investigations have not been recognized as an adverse employment action by the Fifth Circuit).

integrity and accuracy of her polygraph examination have since been called into question based on findings of misconduct by the polygrapher who administered the examination. Doc. #76 at 20; Doc. #46, Ex. 1 at 32. As to whether Plaintiff was terminated solely as a result of her polygraph examination in violation of HPD policy, "[f]ailure to follow a policy or procedure may be probative of discriminatory animus where there is proof that the employee was treated differently than other employees." *Palacios v. City of Crystal City, Tex.*, 634 F. App'x 399, 404 (5th Cir. 2015). Here, Plaintiff does not offer any evidence of other officers who failed polygraph examinations being treated differently. *See* Doc. #76. As to the integrity and accuracy of Plaintiff's polygraph examination, for the purposes of unlawful animus, "the issue is whether the employer's perception, accurate or not, was the real reason for the plaintiff's termination." *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 578 n1 (5th Cir. 2020), *as revised* (Aug. 14, 2020) (cleaned up). Plaintiff does not offer any evidence that Lunsford or O'Connell knew when Plaintiff was terminated in May 2017 that the polygrapher who administered her test acted improperly or that the results of Plaintiff's polygraph examination were potentially invalid based on said conduct. *See* Doc. #76. As such, doubts raised in December 2019 about the "integrity and accuracy" of the polygraph examination are not probative of any animus held by Lundsford or O'Connell at the relevant time.

Plaintiff also argues that Defendant's reasons for finding her insubordinate were either false or unworthy of credence. Doc. #76 at 18. Plaintiff's first act of insubordination occurred when, despite Lundsford's direct, written order to Plaintiff to cooperate fully with O'Connell's investigation, Plaintiff sent O'Connell an email stating that she would not "finish th[e] process" until her she was told by her attorney to do so. Doc. #23, Ex. 6 at 1; Doc. #40, Ex. 20 at 1. After a second written order by Lundsford to meet with O'Connell, Plaintiff acquiesced. Doc. #23, Ex. 6 at 1–2. Assuming without deciding that Plaintiff is correct that her refusal to meet with

7

O'Connell absent her lawyer's approval was lawful under a Garrity Warning, HPD policy does not require that all employees under investigation receive a Garrity Warning and Plaintiff concedes that she has no memory or evidence of being provided such a warning. Doc. #76 at 18, n15; Doc. #40, Ex. 16 at 4.

Separately, at an April 12, 2017 meeting, Plaintiff interrupted and spoke over Lunsford, made inappropriate comments, used her cell phone, refused Lunsford's direct order to submit to a polygraph examination, and refused to sign a document stating that she received Lundsford's written order to submit to said examination. Doc. #23, Ex.3, Ex. 4, Ex. 5 at 253:2–17. Notably, Plaintiff does not dispute the transcript provided of the April 12 meeting. Doc. #23, Ex. 4; Doc. #76. Lundsford sent Plaintiff an email on April 14, 2017 stating that (1) Plaintiff's April 12 refusal to take the polygraph examination was a "clear act of insubordination" that could result in termination, (2) he "decided to give [Plaintiff] another opportunity to comply with [his] instruction" and (3) her failure to comply would lead to discipline, which could include termination. Doc. #40, Ex 5 at 1. Contrary to Plaintiff's argument, nowhere in the email does it state that Plaintiff would not be disciplined for any of her April 12 conduct if she complied with the second direct order. *See id.*; Doc. #76 at 19. Lundsford later characterized his conduct as deferring his "decision on that issue." Doc. #23, Ex. 6 at 3. When Plaintiff complied with the second order, her results indicated deception. *Id.* As such, the Court cannot say that Plaintiff has created a genuine issue of material fact as to whether Defendant's justification for firing Plaintiff based on repeated acts of insubordination and dishonesty is false or unworthy or credence.

Finally, Plaintiff argues that Lundsford's retaliatory animus is evinced by his vague reasons for terminating Plaintiff, which violated HPD Directive 2.4.[3] Doc. #76 at 14–15. While Directive 2.4 requires that an employee under investigation be given a copy of the complaint made against her, she need only be notified of the final disposition of the complaint at the conclusion of the investigation. Doc. #40, Ex. 16 at 7. Though Plaintiff argues that Lundsford violated Directive 2.4 by failing to include in Plaintiff's termination letter a finding of facts stating the final disposition on each allegation made against her, as is required for a final disposition memorandum, she does not point to any provision of Directive 2.4 stating that such information must be included in a termination letter. *See id.*; Doc. #76 at 14–17. Even if the Court were to conclude that such a requirement exists and was violated, a "defendant's failure to follow its own policy is not probative of discriminatory animus absent proof that the plaintiff was treated differently than other [] employees." *Smith v. City of St. Martinville*, 575 F. App'x 435, 441–42 (5th Cir. 2014). Again, Plaintiff has not offered evidence of any other employees being treated differently. *See* Doc. #76.

Notably, Plaintiff has not argued, let alone offered evidence of, why Lundsford or O'Connell would have a retaliatory animus against her. *Compare* Doc. #76 *with Zamora*, 798 F.3d at 332 (finding retaliatory motive supported by evidence that defendant "operated under a 'code of silence' in which officers would retaliate against those who complained, spoke out against others, or filed complaints or lawsuits"). As such, and in light of all other evidence offered, the

---

[3] Plaintiff also argues that the "lack of clear policy violations" and failure to delineate every act of insubordination and dishonest statement allowed Defendant to shift the reasons for Plaintiff's termination. Doc. #76 at 15. "[I]nconsistent or post-hoc explanations for a termination decision may be indicative of pretext." *Smith v. City of St. Martinville*, 575 F. App'x 435, 442 (5th Cir. 2014). Here, however, Defendant's reasons for terminating Plaintiff have been consistent and Plaintiff offers no authority for the proposition that her termination letter required such exacting specificity. *See* Doc. #23 at 29; *id.*, Ex. 6; and Doc. #76 at 15–17.

Court finds that Plaintiff has failed to create a genuine issue of material fact that Defendant's reasons for terminating her employment were pretext for its retaliatory motive.

Accordingly, Defendant's Motion for Summary Judgment is hereby GRANTED and this case is DISMISSED.

It is so ORDERED.

FEB 0 7 2022
_____
Date

_____
The Honorable Alfred H. Bennett
United States District Judge